## BURTRUM v. BURTRUM.

No. 28156.   Nov. 22, 1938.

W. H. Kornegay and Carey Caldwell, for plaintiff in error.

Richard L. Wheatley, for defendant in error.

WELCH, J.   This is an appeal from a judgment of the district court of Craig county, Okla., refusing to modify a former judgment approving a property settlement

between Nellie M. Burtrum, plaintiff in error, and J. W. Burtrum, defendant in error. The parties occupy the same relative positions here. as in the trial court, and will be hereinafter referred to as the plaintiff and the defendant.

The plaintiff sued the defendant for divorce, for a division of the property accumulated by them during coverture, for alimony and attorney's fees. On the morning of the day the case was set for trial, the parties reached a property settlement. The defendant made no defense and judgment was rendered granting the plaintiff a divorce and approving the property settlement. Two years thereafter the plaintiff began this action to modify the decree in so far as it related to the property settlement.

The trial court refused to modify the decree, and the plaintiff assigns error. All of the assignments of error are presented together under the contention that the plaintiff was entitled to modification of the judgment approving the property settlement because of the fraud of the defendant in procuring the settlement.

The record discloses that at the time the original action for divorce and division of property was filed the defendant had title to 160 acres of land located in Beaver county, Okla., and 400 acres of land located in Craig county, Okla., and that defendant had $24,468.65 in cash deposited to his credit in various banks.

Practically all of said property and money was accumulated during the married life of the plaintiff and defendant. In the property settlement the plaintiff received $8 750 in money and 160 acres of land. The plaintiff had knowledge of the amount, location, and value of the land, but did not know the amount of money under the control of the defendant. The plaintiff, through her attorney, made a diligent investigation to determine the amount of money the defendant had on deposit in the various banks where defendant had done business in the past. The record further discloses that the defendant, after the divorce petition had been filed and before the property settlement was made, transferred bank deposits of $10,400.59, $7,456, and $3,700 to his sons.

Prior to the property settlement the plaintiff's attorney had discovered or had reason to believe that the defendant had approximately $12,200 in cash. The defendant had an additional sum of approximately $12,200

that was unknown to plaintiff. All negotiations leading to the property settlement were carried on by the attorneys and not in the presence of the parties. The plaintiff's attorney during the negotiations made certain calculations as to the value of the property in the hands of the defendant, in which he calculated the value of the 560 acres of land to be of the value of $20 per acre, or of a total value of $11,200. Plaintiff contended in this action that she accepted $8,750 and 160 acres of land under the belief that she was receiving approximately one-half of the property, and that the defendant induced that belief and the signing of the agreement by the fraudulent concealment of the amount of money in his hands, and that the conduct of the defendant was a fraud upon the plaintiff and the trial court that granted the divorce and approved the property settlement.

There is no rule of law requiring any fixed percentage of so-called joint accumulations to be set apart or allowed to one of the parties where divorce is granted for the fault of the other party; the rule is that the division of the property depends upon the facts and circumstances of each case. Dresser v. Dresser, 164 Okla. 94, 22 P.2d 1012.

The rule is stated in paragraph 5 of the syllabus in the case of Bussey v. Bussey, 148 Okla. 10, 296 P. 401, as follows:

"A court of equity, on granting a divorce to either the husband or wife, is required by section 508, C. O. S. 1921 (sec. 672, O. S. 1931), to make a just, fair, and equitable division of the properties acquired by the parties jointly during their marriage. In doing so, the court is not required to divide the property equally between the parties, but is given a wide latitude in determining just what part of the jointly accumulated properties shall be given to each of the parties."

The conduct of the parties during their married life and the other facts and circumstances from which the trial court could determine whether the property settlement was or was not an equitable division of the property were not shown in this action. But the above-stated rule may have been taken into consideration in the acceptance of the property settlement. The pleadings in the divorce case show that the most seriously contested issue was the division of property. The defendant's answer admitted that a divorce would best serve the interests of both parties, but denied any fault, alleged the plaintiff was at fault, and specifically prayed that the

fault of the plaintiff be taken into consideration in the division of the property.

The parties did not enter into negotiations themselves nor make any representations directly to each other. The plaintiff was represented by able counsel, and there was no duress or overreaching because of a confidential relationship.

Although the defendant transferred certain bank accounts, and may have intended thereby to gain an advantage in a future property settlement, there is no clear proof that the plaintiff was induced to accept the agreement by defendant's conduct and concealment.

The record discloses that plaintiff's counsel was asked to submit a proposition in settlement of the property rights and that he made an offer in behalf of the plaintiff to accept $10,000 and the 160 acres of land. The offer was rejected by the defendant with the assurance that he would prefer to submit the issue to the court rather than settle on that basis. The plaintiff, through counsel, then offered to accept $8,500 and the 160 acres of land, in addition to $250 she had theretofore received, and made the further statement that if that offer was not accepted, they were ready to submit the issues to the court. The offer was accepted, the defendant made no defense, the plaintiff was granted a divorce, and the property settlement of the parties was approved.

Whether the plaintiff was induced to make the agreement by a belief that she was obtaining a certain percentage of the property, or whether she made the agreement in consideration of the fact that the issue would not be a controverted issue in the divorce trial, is not clear. Although the defendant may have acted with an improper intent in transferring his accounts, it is not clear that the agreement was induced by fraud.

It is a generally accepted rule that when a transaction is fairly susceptible of two constructions, the one which will free it from the imputation of fraud will be adopted. Davis v. Howe, 99 Okla. 118, 226 P. 316; Cromwell v. Ream, 175 Okla. 408, 52 P.2d 752, and Gungoll v. Elsberry, 177 Okla. 301, 58 P.2d 852.

The trial court did not find that the agreement was induced by fraud. The findings of the trial court are supported by the evidence. The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY and PHELPS, JJ., concur.